UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARIUS JAMES AUBREY,

        Petitioner,               Case No. 1:20-cv-330

v.                                      Honorable Janet T. Neff

GREGORY SKIPPER,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.      Factual allegations**

Petitioner Darius James Aubrey is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  Petitioner pleaded *nolo contendere* in the Muskegon County Circuit Court to first-degree arson.  On October 12, 2017, the court sentenced Petitioner as a third-degree habitual offender to a prison term of 14 years 10 months to 30 years.  The conviction arose out of an incident in which his girlfriend's apartment was set on fire.

The police report related to the incident included a statement by Officer Shaun Kozal, in which he described his review of security camera footage:

> On 5/28/17 at about 0430 hours, I received a phone call at home from Sgt. Anderson in regards to this fire.  Sgt. Anderson requested that I respond into work to assist with reviewing the CCTV from East Park Manor.
>
> At about 520 hours, I arrived on scene and spoke to Sgt. Anderson.  I was advised the fire was at 645-D. E Hovey.  I then went to the East Park Manor office in an attempt to review the video.  Sgt. Anderson advised that the back door of the apartment was kicked in and investigators wanted to review footage from that area.
>
> I found a camera that is mounted to the office building facing NE that covers the back parking lot of the office and the area behind the 645 E Hovey and building on Howell.  I reviewed the video from about 0255 hours and stopped at 0322 hours. I observed one subject walking from Howell to Hovey but he never went to the back door.  I found around 0321 hours several people at the back door of the apartment.  From the video you could see smoke from the back of the apartment upstairs.  This appeared to be a rescue attempt by citizens in the area.
>
> I then found another camera on the front of the office that faces NE also and it shows a large portion of the street in front of the apartment.  At about 0306 hours, I found a subject in the light colored shirt or jacket walking SB through the large parking lot near 616 E. Hovey.  I could see the subject walk to the south side of Hovey but then I lost him.  I then found a camera from 661 E. Hovey that faces WB and was able to pick the subject up walking EB on Hovey near the 661 E. Hovey building.  I could not tell if he joined a group of subject[s] at a building or not.
>
> Due to the size of the file I was not able to download it to a jump drive and due to the configuration of the recording equipment I was not able to make a CD.

2

> Chief Dean from MHFD, Sgt. Anderson and Det. Ryndress were in the room also and are aware that the video has not been saved yet.

(ECF No. 1-5, PageID.49.)

Following his arrest, Petitioner's counsel discussed the video with him, but never showed Petitioner the video or any still photographs taken from the video. Petitioner's counsel told him that he had to plead to the charges and, believing that his counsel had investigated the case, Petitioner pleaded no contest. Petitioner claims that he was misled into pleading no contest because he believed that his counsel had properly investigated the circumstances surrounding the charge. Petitioner asserts that his counsel could not have acted effectively without reviewing the video with him.

Petitioner filed a delayed application for leave to appeal on June 11, 2018, which was denied by the Michigan Court of Appeals for lack of merit on the grounds presented on August 1, 2018. (ECF No.1, PageID.2.) The Michigan Supreme Court denied leave to appeal on April 30, 2019. (*Id.*; ECF No. 1-5, PageID.50.)

On May 4, 2020, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on April 15, 2020. (Pet., ECF No. 1, PageID.11.)

The petition raises one ground for relief, as follows:

I. Petitioner received ineffective assistance of counsel where counsel persuaded Petitioner to plead no contest without having investigated a video purporting to show someone leaving the residence that was set on fire, rendering Petitioner's plea involuntary.

(Pet., ECF No. 1, PageID.2.)

**II.     AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

4

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III.   Discussion**

Petitioner claims that ineffective assistance from his trial counsel resulted in an involuntary plea. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

5

established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).[1] Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. As the United States Supreme Court has explained,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that

---

[1] Petitioner's plea was no contest, or *nolo contendere*, instead of guilty, but that does not change the analysis. In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

7

> occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. Jul. 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001)). Stated differently, the claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill*, 474 U.S. at 58; *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.

Petitioner attaches a copy of his September 6, 2017, plea hearing as an exhibit to his habeas corpus petition. (ECF No. 1-4, PageID.20-35.) During the plea hearing, Petitioner pleaded to two separate charges in exchange for the prosecution dropping another charge. Specifically, Petitioner pleaded no contest to first-degree arson and aggravated domestic violence. (*Id.* at PageID.29-30.)

With regard to the first-degree arson, the Court informed Petitioner that it was punishable by life or any term of years and a $20,000 fine. Petitioner stated that he understood the charge and the penalties. (*Id.* at PageID.28.)

> THE COURT: There is no mandatory minimum term. If you have previously been convicted of a felony, you may be charged as a habitual offender and the maximum term may be increased. If you're on probation or parole, you could be charged with a violation.
>
> If your plea is accepted, before I sentence you, I will give you, your attorney, and the prosecutor an opportunity to speak and review a presentence report. Any appeal of your plea and sentence is by Application for Leave to Appeal and not by Right of Appeal.
>
> Did you go through your Advice of Rights with your attorney?

      THE DEFENDANT:  Yes.

      THE COURT:  Do you have any questions on them?

      THE DEFENDANT:  No.

      THE COURT:  By signing those Advice of Rights, you understand that you would be waiving or giving up all of your rights on those forms?

      THE DEFENDANT:  Yes.

      THE COURT:  Have you had an opportunity to discuss these charges with your attorney?

      THE DEFENDANT:  Yes.

      THE COURT:  You have one of four pleas.  You could plead not guilty or stand mute, which I would treat as a not guilty; guilty or no contest, which I would treat as a guilty.

      In File 17-3101-FC, how do you plead to Count I, first-degree arson?

      THE DEFENDANT:  No contest.

      THE COURT:  I'm sorry?

      THE DEFENDANT:  No contest.

(*Id.* at PageID.29-30.)

      MR. CORBETT [the prosecutor]:  People have no objection to reading the Muskegon Heights Police Report 17-1820 and 17-1757 for the respective cases.

      MR. CATALINO [Petitioner's attorney]:  That's fine.  And I think – I think we've provided the Court with maybe I think both of those reports.  But as the Court is aware of the factual scenarios for the arson, the factual scenario laid out in that report I believe also indicates that for the domestic, there was – my client hit the victim.  She testified she – or reported she was hit and then fell down the stairs cutting her head and requiring stitches.

      THE COURT:  You understand, Mr. Aubrey, if I accept your plea of no contest, it would be the same as a guilty plea?

      THE DEFENDANT:  Yes.

      THE COURT:  I have reviewed the police report which indicates that on or about May 28th, 2017, at the area of 645 Hovey, Apartment D, Muskegon Heights, County of Muskegon, State of Michigan, it does establish that the Defendant

9

>committed the offense of first-degree arson and the injuries in this case, both Ms. Bradford and Kylah Spencer, did go to the hospital because of the smoke.

(*Id.* at PageID.30-31.)

The Prosecutor asked the Court whether she had read the police report for the factual basis of the first-degree arson charge, and the Court stated that she had. The police reports that formed the basis for Petitioner's no contest pleas were entered into evidence and Petitioner's attorney indicated that the Court had complied with the requirement that he inform Petitioner of his trial rights on the record. (*Id.* at PageID.32-33.)

Petitioner does not attack the jurisdiction of the court. Nor does his claim of ineffective assistance attack the voluntary or intelligent nature of his plea. As noted above, Petitioner complains that he was never shown the video footage of the area surrounding the apartment building, which somehow rendered his plea unknowing and involuntary. However, Petitioner was informed about the existence of video footage showing the area around the apartment on the night of the arson. Petitioner does not claim that he asked to see to the footage. Nor does Petitioner indicate that he had any reason to question whether he was the individual shown in the security footage. Petitioner was informed of his rights and the consequences of a plea during his plea hearing. Petitioner fails to allege any facts which would render his plea unknowing or involuntary.

Moreover, the Court notes that Petitioner's sole argument, that his attorney did not show him the footage of the security video, is not an indication that his attorney did not personally view the footage or conduct an investigation. Petitioner does not allege that the video did not show him, or someone who looked like him, in the area of the apartment at the time of the arson. The fact that Petitioner did not personally view the video is not sufficient to show that his attorney's performance fell below an objective standard of reasonableness. Nor does Petitioner succeed in

showing that if he had seen the video, he would not have pleaded guilty and would have insisted on going to trial. Therefore, Petitioner is not entitled to habeas corpus relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial

of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   May 12, 2020                             /s/ Janet T. Neff
                                                                          Janet T. Neff
                                                                          United States District Judge